We call the next case. 16-1357 Albert DiBrito v. City of St Joseph, a Michigan Municipal Corporation, et al. Arguments not to exceed 15 minutes per side. Ms. Welton for the appellant. Good morning, Your Honors. May it please the Court. My name is Christine Welton and I represent Mr. Albert DiBrito, the appellant in this case. I'd like to reserve three minutes for rebuttal. Your Honors, Mr. DiBrito dedicated his life and livelihood to public service, as in law enforcement. He wanted to make a positive contribution to the community. So after retiring from the FBI, where he had a long and successful career, he accepted a position with the City Public Safety Department for the City of St. Joseph. When he came to that department, he found numerous inefficiencies, instances of favoritism, and some concerning unethical at best and potentially criminal at worst conduct. He voiced his legitimate concerns about some of this conduct that was occurring from the director of the department to the city manager and, in return, was fired. In granting summary judgment to the appellees, the district court drew inferences against Mr. DiBrito and also undertook the role of fact finder, weighing contradictory facts and evidence in favor of the appellees. This is entirely inconsistent with standards for reviewing a summary judgment motion. The truth is paramount to proper functioning of an ordered society, and if we don't allow insiders the opportunity to speak about and raise and bring to the surface concerns about improper conduct within our organizations, our governmental organizations, we lose part of the fabric. We endanger one of our most cherished freedoms, the First Amendment freedom of speech. That might be true, but the Supreme Court in the Garcetti case said that if it's a matter of the functioning of the government as opposed to speech by a private citizen regarding a public concern, that there is no First Amendment protection. I mean, you're arguing, well, maybe this is not a good policy, that the policy ought to be that public employees should always be able to blow the whistle no matter what the concern is. But that's not what the Supreme Court said, is it? And that's what we have to address here. I believe the court in Garcetti indicated that speech in furtherance of official duties would not be protected. That's what Judge Quist here ruled that this was. This is official duties. Well, there's, I mean, the two instances. But the first instance about the purchase of the firearm, there your client actually did a governmental memo on government letterhead, right? And complained that this violated the department policy, or may have violated the department. Okay, I mean, that looks like it's a department memo. It doesn't look like a public concern matter to me, I mean, by the memo itself. Well, I would submit, Your Honor, the memo was printed on letterhead for the city. And he signed it with his official title. He did, Your Honor. But he typed it at home on his personal computer. It looks like he's doing it as part of his business. But it is. As opposed to a private citizen raising a public concern. It looks like it's part of the business function, just by the document itself. But it can be both, I would submit, Your Honor. Mixed speech has been protected. And if there's an element of a private concern about the issue, as well as an element of a public concern, which misconduct by the head of a law enforcement department in any community would be. But does it matter that there wasn't any substantiation, at least at the point that he was making the complaint, that it was misconduct? Actually, Your Honor, I believe it was confirmed eventually to be misconduct. It wasn't necessarily. I'm talking about at the time. It wasn't necessarily a violation of a specific policy at the time, but the city did determine that there should be a policy because it was not an advisable practice. So that concern was substantiated, and they did implement a policy after the fact. So do we judge it by what it was at the time of the act, or as of later on? Well, you can judge it by both because at the time, Mr. DiBrito believed that not only was it unethical, it was potentially criminal. Criminal charges weren't pressed either, which is an issue in this case. But even if criminal charges weren't pressed, A, it doesn't mean there was no crime. It simply means there was no decision to move forward to investigate and charge a crime. And, B, even if there wasn't determined to be a crime, the belief that there may be at the time is sufficient to warrant the ability to raise that concern. And, again, crime happening at the top of an organization is a public concern. Public concern is construed and meant to be construed quite broadly. So in respect to the firearm, it's not dispositive that there weren't criminal charges brought. And even with regard to the issue of defamation, that in itself is not simply a private matter either because within the bigger picture, yes, he's defaming one person, but he's doing it in the department to a mutual subordinate. That has the added impact of disrupting the ability of the department, potentially disrupting. Why is that a public concern as opposed to a business concern? That sounds like it's a functioning of the business, that defamation is going on between two employees in the police department. Why does the public have any concern about that? Well, Your Honor, the public would have a concern about that specifically because it might infringe, very likely could infringe, the ability of the officers who are engaged in this battle for securing loyalty or undermining from the top of the second in command. Perhaps officers loyal to the director would not want to... That seems kind of tenuous, to say that that's an important public interest as opposed to a business interest. To the extent that it disrupts... Almost anything that goes on in a business that's a governmental agency like this, you could always say will have some public impact. And under your theory, I guess, everything would be a public concern and Garcetti wouldn't have any teeth, I guess. I mean, wouldn't have any meaning, right? I disagree because this agency in particular exists to serve and protect. And if the ability of the officers engaged in that role is hindered by the undermining that's happening, then that can create a problem for the community and they should be concerned about that. With a broader brush, the primary issue in our position is that this case was not properly granted, a not properly granted motion for summary judgment. There are genuine issues of material fact throughout. And when you're drawing inferences on a motion for summary, they need to be drawn in favor of the non-booming party, which was Mr. DiBrito in this case. So if you look at, for example, the question of whether the speech was made pursuant to his job duties, which the appellees argue that they were and the court found that they were, four of seven factors, even if you don't look at the later cases of Lane and this court's case in Bolton v. Swanson, four of those seven, there are factors on both sides. There are facts that go for both sides. When that happens, the question is properly submitted to a jury, not removed from the jury and decided in the court on a summary judgment. Is the question of whether the statement was a matter of public concern, one for the jury, or one for the court as a matter of law? We submit that it's a question of fact for the jury. Turn it over to the jury? Because, for example, the issue of the element of the impetus for the speech, for example. Appellees argue that the impetus was an employee beef. There was a disagreement a Friday before between the director and Mr. DiBrito, and this timing they submit is the reason for the report as opposed to the legitimate concern about the misconduct. You're talking about the motivation. I think Judge Seiler made a good point, though. Whether a statement is a matter of public concern or private concern sounds like a matter of law to me as opposed to a matter of fact. Are you saying that juries could, on the same facts, come up with different conclusions on the same facts? That doesn't seem right as to legal matters. Whether it's public or private as opposed to whether it's pursuant to his job duties? Is that? Well, whether the statement, we have a particular statement, and that is a matter of public concern or private concern, you're saying that's always an issue of fact? No, Your Honor. I was speaking about when speech is made pursuant to your job duties. But when you're talking about whether speech is a public concern, I believe that is a question of law. But, again, if you look at whether it's made pursuant to job duties, there are issues on four of seven of the factors. Yes, there's an issue whether writing the report at home and submitting it on letterhead and giving it to the city manager, whether that is going to go in favor one way or the other of speech pursuant to job duties. The impetus, again, the timing, whether it was a personal beef. On its face, none of the complaints made by Mr. DiBrito addressed him personally. It addressed misconduct in office by the head of the department. So his purpose was to protect the department, protect the public, and expose the corruption. He could have spoken. He could have gone to the media. He chose not to do that. He could have gone to a city council meeting. He chose not to do that. Because of his unique position as deputy director, A, that's how he had knowledge of the misconduct to begin with. An outsider wouldn't have. And B, he wanted to honor both roles, both his role as a citizen to protect the community and have these types of issues brought to the front, but also his role in the public safety department to protect that department and have its continued functioning be successful and not impacted negatively by these behaviors. So to look at the audience, he used the audience he felt was the best possible way, but that choice should not impact whether the content of the speech is either public or private. It's the content more that's critical and the outcome. When it comes to balancing the employer's and the employee's interests, the district court determined that the government interest was paramount. However, in this case, it failed to recognize that Mr. DiBrito's interests were aligned with the organization. And I see, Your Honors, that my time has concluded, so I will address anything further in rebuttal. Thank you. May it please the court. Sarah Hartman, I am from the law firm of Straub, Seaman, and Allen. I am here on behalf of Appellees Director Mark Clapp, City Manager Richard Lewis, and the City of St. Joseph. This case, in plaintiff's eyes, would have the district judge draw not just all inferences in plaintiff's favor, but that the standard is all reasonable inferences in the favor of the plaintiff. And any inferences that Judge Quist did draw, I would contend, were not reasonably to be construed when you look at the entire factual record in favor of the plaintiff. Do you think that the question of whether this statement is a matter of public concern or private concern is for the jury to decide? No, Judge Siler. The case law is clear that the matter of a public concern versus a private concern is one of law to be decided by the court. And this case amounts to an employee dispute, and I think that Judge Quist very clearly found that to be the case. DiBrito was speaking in his capacity as a public employee when he filed both of these complaints with Richard Lewis. As this court has properly pointed out, it was made on department letterhead, and the argument or the complaint that he made was signed as deputy director. During the course of his interview with City Manager Clapp, he pointed out this second allegation, second argument of speech, what he claims is speech, to City Manager Lewis arguing the defamation. I contend that both items of speech under Lane, even as narrowed by, or as Garcetti, even as narrowed by Lane, both of those were made within the scope of his duties as a public employee, not made as a private citizen, and the court properly found that as a matter of law. Do you think it would have been different if DiBrito had just caught Lewis out on the street and said, look, Clapp's buying pistols from people here, and I think we ought to get rid of him, or something like that? Is that different than going home and writing a letter? It might be a little bit better in his favor, but I think that that case even still would be in his capacity as deputy director talking with his supervisor's supervisor. And the personnel policy for the city specifically points out that DiBrito was to report to City Manager Lewis. That is the chain of command, and you can see that in the memo prepared by Richard Lewis, which was attached to our motion for summary disposition. So just calling him out on the street, I think that that's a little bit different. There was a Sixth Circuit case where the speaker was contacting city commissioners and actually told them over the phone, I am talking as a private citizen. And I think that that distinction much more so would lean that towards being private speech rather than public speech. Is the capacity in either or situation that you're either doing it as a private citizen or you're doing it as a public employee? I think they were trying to argue that maybe you could have a hybrid situation where you're doing both. I think in the situation where maybe there's a hybrid or a close call, that's what that balancing test is there for at the end. And also that the adverse employment action would have to be a substantial or motivating factor. And I think that those parts of the analysis help to clarify the motivation of the speech and the context of the speech. Well, the defendants contend that the speech, especially the rumor that was being spread, was also not a matter of public concern. It was one of private concern. When you look at the content form and context of the record as a whole, the point of the speech in question was clearly personal in nature to Mr. DiBrito. Well, if it had been a violation of law for Clapp to buy this firearm, then it would have been different, right? I'm actually talking about the rumor instance. The judge in the district court found that the rumor instance was one of asserting a private interest, while the shotgun incident was made in conformance with Mr. DiBrito's employment. It was a private speech. And I believe that both instances were made as private speech as opposed to public speech, but in particular the rumor is a private interest type. Did the rumor have something to do with the former city manager? Yes. And why would that not be a public concern if it's about the person who's running the city? I'm not quite sure what the rumor was about the former city manager. It had something to do with him, but if it had something to do with him running the government, it would seem like that would be public. You're looking at the substance of the rumor as the speech, though, and not that DiBrito was complaining that the speech at issue is the complaining of the conduct. Okay, he's not complaining of the conduct of the city manager. The director of public safety, Mark Clapp, spoke to Officer Vought and continued a rumor that had already been spread around the city and around the department. The rumor was how he got his job. It was how Mr. DiBrito got his job. Not necessarily that the city manager was doing something illegal or the former city manager or something. No. That might be a public concern if it had to be about the former city manager and that he had found out something about it that the public there might have an interest in it, but that wasn't the case. It was here about how he got his job, I guess. But that's not the speech, though. The speech that Mr. DiBrito is complaining about is simply that his supervisor was badmouthing him, that he wasn't qualified for the job, that he'd gotten it through a deal or something like that. He'd gotten it through some inappropriate manner. And I think that that goes to a personnel issue. That is really a quintessential personnel dispute. The two managers didn't get along, Mr. DiBrito and Mr. Clapp, so DiBrito is not happy that he has found out that Clapp was furthering a rumor that had been spread about him. And the underlying facts of that are that supposedly there was a $40,000 donation made to a project of Mr. DiBrito as well as him getting his job from the previous city manager to Mr. Lewis. And in that circumstance, both of those things are true. There was a donation made and he did get the job. But I would contend that that is really a matter of personal interest to Mr. DiBrito. And that goes to, I'm going to bounce to the due process argument while I'm on that note. Mr. DiBrito has claimed a due process argument based on the injury to his reputation, good name, honor, and integrity under MedCorp versus City of Lima. In order to analyze that type of claim, the court has to look at five different factors, whether or not the allegedly stigmatizing statements are made in connection with the loss of a governmental right or entitlement, because there's no constitutional liberty interest simply in one's reputation standing all by itself. The defendant also has to contend that the defamatory statements would have prevented the plaintiff from taking advantage of another employment opportunity. Now, this is what I think Mr. DiBrito argues in his brief. He contends that somehow Clapp's statement about him privately to Mr. Vaught has created an uncrossable barrier for him from seeking future employment. But the Sixth Circuit case law has very clearly held that just making a plaintiff less attractive to future employers does not constitute a liberty deprivation. And I would also contend that the district court properly found that there's no evidence supporting causation between the statement made by Clapp and any loss of a governmental right, benefit, or entitlement. Back to the First Amendment claim. When you balance the interest between the public employer and Mr. DiBrito, the district court properly found that the public interest in having efficiently run services is paramount to Mr. DiBrito's interest in making the two complaints that he made to Mr. Lewis. DiBrito's speech acted to create disharmony among coworkers. He violated a level of trust when he went outside the department to research and complain to the state attorney's office about Clapp's purchase of the shotgun, and Mr. Lewis called him on that during his investigation. The district court found that there was no clear violation of law, as this court has also pointed out, no clear violation of any departmental policy, and Mr. DiBrito waited four months before he reported the shotgun purchase to Mr. Lewis. Maintaining a functional public safety department outweighs Mr. DiBrito's interest in making the speech that he made. Lastly, and probably most importantly, the speech has to be a substantial or motivating factor in the termination or adverse employment decision. When you look at the record as a whole, when you look at the independent workplace investigation that was conducted, Mr. DiBrito's own conduct and his actions towards his fellow officers was the reason that he was terminated. Normally that's an issue of fact, isn't it? It could be, but... I think that Judge Quist found that in this case, and he certainly found that there was no direct evidence linking Mr. DiBrito's termination to the speech that was made. So even if you don't consider the facts and circumstances surrounding that, Mr. DiBrito still has to have some evidence, a scintilla of evidence at least, to directly show that his termination of employment was caused by the speech that he made. And the district court found that he has failed to do that. Draw an inference from it, and that's what they're... Is it a reasonable inference, and does the evidence overwhelm the other way, and that's all. I recognize Judge Quist's rule that way, but I think it's a tougher grounds for reference, that's all. It's, like you said, a reasonable inference. And I think that Judge Quist found that even making all reasonable inferences in favor of the plaintiff, that his two very minor inferences that you would have to make in order to find that it's a motivating factor were the temporal proximity and the one conversation that CLAP had with Mr. Vaught saying that DiBrito had to go. And without anything more than that, there's no evidence to support that Mr. DiBrito was fired because he made those statements. And as far as the immunities go, the district court properly found qualified immunity for both of these individual defendants. Qualified immunity, as this court is well aware, gives officials room to make reasonable, even if those decisions are ultimately mistaken. As the district court pointed out, Lane had not yet been decided at the time Mr. Lewis took his action. And even if there was an underlying constitutional violation, the defendants in this case could reasonably have believed that DiBrito's statements were made in furtherance of his employment activities and not made as a private citizen. As far as Monell, there's no municipal liability unless there's a policy or custom, which was the practice of the city. Lewis had the ability to hire and fire employees and he acted as a decision maker, exercising his discretion when he terminated Mr. DiBrito. The district court properly found that those claims were unique and personal to him. Does the court have any further questions? I think we do not. Thank you, counsel. Thank you. Rebuttal? Thank you. Just a couple of points, your honors. First, I would like to address the timeline for the rumor. I believe perhaps sister counsel's statements may be interpreted that there was some truth to the rumor. And based on the timeline behind the rumor, it couldn't have been true. And in fact, if it had been true, it would also be a crime for an FBI agent to drop an investigation and accept money to do so. But that was never pursued, including by Director Clapp, who was spreading the rumor. So the rumor was based on an allegation that there was an FBI inquiry into the former city manager, Walsh, in 2006-2007. And there was talk later in 2009 of implementing a water rescue team in St. Joe. In 2011, the city began talking about consolidating their police and fire department. And in 2012, Deputy DeBrito was hired as deputy director in that consolidated department. For the rumor to work, Walsh would have had to have incredible foresight to say, hey, in six years I'm going to have a job for you if you'll get rid of this investigation and I'll give money to your water rescue team. And initially, Mr. DeBrito wasn't even the only person talking about the water rescue team. And at the first city council meeting, he wasn't even present. Other people were working on it. You're saying the reason that he got fired for this second issue was he complained because Clapp was telling false rumors about him. He's lying about my background and I don't like it, or something to that effect. Well, more to the point that there's misconduct happening from the top of the department, and he raised two legitimate concerns, both of which were substantiated. Director Clapp was put on suspension for the conversation that he had with Deputy Vaught concerning the rumor that he shouldn't have shared and admits that he shouldn't have shared it. He was also, they did come out with the policy, they did change the policy for the purchase of weapons that come into the department. So he thinks he was fired in part because of a policy that Lewis implemented right after he spoke that there's going to be no tolerance for exposure of corruption in the police department. Exposure? No, you're talking about spreading a rumor, not exposing. If you're talking about exposing corruption, that would be a matter of public concern. But here you're just talking about a private disagreement between two employees that he's spreading rumors as to why I got my job. I don't see how that's a matter of public concern. The speech was more broad, though, Your Honor. The speech included the issue with the firearm, the issue with the defamation, and violations of union contract by Deputy Clapp. Okay, I thought we only had the two. I thought we had the firearm incident, I thought we had the defamation. I didn't know we had a third one, too. There was also a reference in the complaint to violation of union contract, for example, by delaying the sergeant promotion process, which is what delayed DiBrito in reporting. I'm sorry, Your Honors, I see my time is up. I'll just briefly conclude. Is the third claim before us? It's stated in the briefing. It's just all part and parcel. He was trying to expose corruption. He had inside knowledge that outsiders wouldn't have in trying to do that. He was terminated. The IWI was pretext, which is demonstrated by a statement almost a month later by Director Clapp to Deputy Blatt that Al had to go. We just have to do it right. Timing is everything. Thank you. Thank you, counsel. The case will be submitted. Clerk, we call the next case.